UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DORIAN STEPNEY, et al.,

    Plaintiffs,

    v.

CITY OF CHICAGO, et al.,

    Defendants.

No. 07 C 5842
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

**I. OVERVIEW**

Plaintiffs filed their seven-count third amended complaint alleging that Defendant Police Officers violated both their constitutional and state rights when they illegally searched the Stepney home in a display of vigilante justice. Defendants now move for partial summary judgment. For the following reasons, Defendants' motion is granted in part and denied in part.

**II. STATEMENT OF FACTS**

On August 28, 2007, Cynthia Stepney ("Cynthia"), her four children, Dorian, Darius, Toni, and Rodney, her nephew Tristan, niece Robin, and her brothers Derrick and Jefty were present at a single family home at 8446 S. Winchester, Chicago, Illinois ("Stepney home"). That evening, Officer McClendon ("McClendon") received a call from his neighbor telling him that his home had been burglarized. McClendon was on duty with a gang intelligence team when he received this call. At the time, McClendon, Branch, Maldonado, Cuadrado, and Hein were investigating an incident unrelated to this lawsuit. In response to the call, McClendon and seven members of his team left their assignment in an attempt to retrieve his possessions. A Sony PlayStation console, seventeen video games, and a flat screen television were stolen from

McClendon's home. Team members Maldonado, Cuadrado, Hein, Branch, Hawkins, Teresi, and Waller went to McClendon's neighborhood to help McClendon in his search. None of the Defendant Officers were dressed in a police uniform that night.

During the team's investigation, at approximately 9:30 p.m., Hawkins and Teresi approached the Stepney home where several young adults were on the front porch. Hawkins asked if he could speak with a parent, and Cynthia came to the front door. Hawkins asked Cynthia if the officers could conduct a "walk through" of her home for McClendon's stolen items, but she said no. The officers entered the Stepney home anyway and conducted a search for the stolen goods.

Hawkins handcuffed Tristan to the porch railing, punched him in the stomach, and twisted his arm. Though Teresi observed this interaction, he did not intervene to stop Hawkins' actions. Hein and Teresi walked from the front of the Stepney's home into the Stepney's back yard to stop anyone who exited the house from the back.

McClendon entered the home with Cuadrado and Branch. After entering the home, McClendon accused Dorian of stealing his electronics. The two began arguing and McClendon punched and choked Dorian, and pushed him down onto a couch. Cuadrado and Cynthia were present and witnessed this altercation. During the scuffle, Cynthia was restrained by two officers, hit in the face, and knocked over, hitting a table that shattered into pieces. Dorian was handcuffed and placed in a police car.

Maldonado denies having any contact with any Plaintiff at the Stepney home. Waller testified that when he arrived at the home, he walked up to the house and saw Cynthia and

McClendon speaking to each other in the front of the house. He denies entering the Stepney home.

While the officers were in the Stepney home, there was a chaotic scene which included shouting, crying, and the use of profanity. No member of McClendon's team filed a police report in connection with the search of the Stepney home. Defendant Officers did not find any of McClendon's stolen property at the Stepney home. In fact, it was later discovered that McClendon's property was stolen by neighborhood teenagers.

While the Defendant Officers were in the Stepney home, Jefty called 911 three times: at 10:32 p.m., at 10:47 p.m., and at 10:57 p.m. Jefty complained to the 911 operator about the Defendants' conduct and requested a supervisor. At 10:48 p.m., a dispatcher radioed for a supervisor to report to the Stepney home. Although Unit 610 was going to accept the assignment, Defendant Sergeant Schulz ("Schulz") (Unit 620) volunteered to take the assignment stating "I'll take care of it." Schulz testified that he was too busy to respond directly to the Stepney home, and that he did not arrive until after midnight. Schulz could not remember anything specific that he was doing that evening that would have prevented him from going directly to the Stepney home, though he does recall that it was a "crazy night." No documents indicate what Schulz was doing between the time he was dispatched at 10:48 p.m. and midnight. Schulz was wearing his police uniform. Members of the McClendon team were at the Stepney home until approximately 11:30 p.m. Schulz testified that when he arrived at the Stepney home he saw no officers, and no one outside. He states that he rang or knocked on the front door, but no one answered. Plaintiffs contend that they were in the home and awake in the living room until approximately 3:30 a.m.

**III. STANDARD OF REVIEW**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir. 2002). I will accept the nonmoving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers*, *Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

## IV. DISCUSSION

### A. Sergeant Schulz

Defendants argue that Schulz is entitled to summary judgment on all of Plaintiffs' claims because the facts fail to establish that he was involved in any of the alleged acts. Plaintiffs concede that they cannot proceed with their claims of unlawful search (count I), excessive force (count II), unlawful detention (count III), and assault and battery (count V) as to Schulz. The remaining counts are failure to intervene (count IV), respondeat superior (count VI) and indemnification (count VII).

Schulz was dispatched at 10:48 p.m., yet, testified at his deposition that he did not arrive at the Stepney home until sometime around midnight. The reason for this delay was allegedly that he was too busy with other police work. Schulz was unable to recall exactly what work he was involved with, but believed that "numerous things happened in the district" and it was "just a busy, crazy night that night." Upon his arrival, Schulz stated that he rang or knocked on the front door but no one answered. It is undisputed that Schulz was dressed in a Chicago Police uniform that evening, and no Plaintiff recalls seeing a Chicago police officer in uniform that evening. Likewise, every Plaintiff and Defendant denies seeing or having contact or conversation with Schulz that evening. This lack of contact is consistent with Schulz's testimony that he did not interact with any of the parties on the night in question.

Plaintiffs, however, argue that Schulz's testimony is implausible. First, they point out that Schulz has no explanation for his delay in arriving at the Stepney home. Next, they state that Cynthia and her family were awake in the living room until approximately 3:30 a.m.; therefore,

Schulz would have seen lights on in the home, and they would have answered the door when he arrived. Also, Schulz never radioed dispatch to inform them that no one was home.

Instead, Plaintiffs argue that it is reasonable to infer that Schulz arrived at the Stepney home soon after 10:48 and was present when the McClendon team was inside the Stepney home. Aside from the unexplained gap in time, however, there is no evidence to show that contrary to his testimony, Schulz arrived at the Stepney home prior to the officers' departure. Though Plaintiffs argue that it is entirely plausible that Schulz responded to the scene, spoke with members of McClendon's team, and "look[ed] the other way," at the summary judgment stage, a party's version of the facts must be supported by evidence. Accordingly, even construing the evidence in a light most favorable to Plaintiffs, I find it insufficient to allow Plaintiffs to move forward with their failure to intervene claim against Schulz. Summary judgment is granted in favor of Defendant Schulz on all counts.

**B. Count I: Illegal Search**

Defendants next argue that Officers Hein, Waller, Hawkins, Maldonado, and Teresi must be dismissed from count I because none of these officers was identified in a way to establish personal responsibility as to the unlawful search allegations. Defendants admit that questions of fact exist as to Defendants McClendon, Branch, and Cuadrado's presence in the Stepney home.

Aside from McClendon, who was identified by all Plaintiffs, the number and identity of the other officers who entered the home is disputed. Cynthia stated that four or five officers entered and searched her home, including McClendon. Dorian could only describe two officers he saw searching the basement. Tristan identified a bald-headed police officer who did not enter the home; he also recalled that an officer on a motorcycle arrived and entered the home. Darius

6

testified that six or seven officers entered the home; he also recalled that the officer that arrived on a motorcycle did not enter the home. Derrick stated that he saw eight or nine officers in the home, but could not identify anyone other than McClendon. Toni testified that she saw two plain-clothed officers inside the home, in addition to McClendon in the living room. Rodney testified that he saw four officers enter the home, including McClendon and the bald-headed officer that handcuffed Tristan. These divergent accounts are consistent with the described chaos that went on at the Stepney home that evening.

It is not disputed that Hawkins is the bald officer who handcuffed Tristan to the porch. There is conflicting testimony as to whether or not Hawkins entered the home, and as such, a question of material fact is appropriate for a jury. Similarly, facts in the record indicate that Teresi initially approached the Stepney home with Hawkins that evening, and Tristan testified that this officer (Teresi) also entered the Stepney home. Though Hawkins and Teresi have denied entering the Stepney home, these facts are in dispute and summary judgment is not appropriate as to these two officers.

Officer Hein admits to being in the back yard of the Stepney home.[1] Plaintiffs argue that because Fourth Amendment protection applies both to a home and its curtilage, his presence in the yard violated their constitutional rights. It is true that the Seventh Circuit has held that a plaintiff's back yard can be part of the "curtilage" of a person's home and is granted protection from unreasonable search pursuant to the Fourth Amendment. *Bleavins v. Bartels*, 422 F.3d 445, 450-51 (7th Cir. 2005) (quoting *Siebert v. Severino*, 256 F.3d 648, 653-54) (7th Cir. 2001). However, no facts are in the record to indicate that either officer conducted any search of the

---

[1] Officer Teresi was also admittedly in the back yard.

7

Stepney's back yard. In fact, the record indicates that Hein and Teresi walked from the front of the Stepney's home into the back yard to stop anyone who exited the house from the back. Plaintiffs fail to show that the officer's mere presence, standing in the back yard, is a violation of their Fourth Amendment rights. Accordingly, Hein's motion for summary judgment as to count I is granted.

As to the remaining officers, Plaintiffs argue that none are entitled to summary judgment because it is reasonable to infer that each unlawfully entered the Stepney home. It is undisputed that McClendon and his seven team members were present at the Stepney home, on August 28, 2007. Plaintiffs argue that because the officers were there with one purpose, to recover McClendon's stolen property, it is reasonable to infer that they all entered the Stepney home unlawfully. Conflicting testimony exists not only as to the officers who allegedly entered the home, but also as to the number of Defendants who entered and searched the home.

To recover under § 1983, a plaintiff must establish that "defendants were personally responsible for depriving him of a known constitutional right." *Tomasso v. City of Chi.*, 782 F.Supp. 1231, 1235 (N.D. Ill. 1991), *rev'd on other grounds, citing Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). Neither Waller nor Maldonado admit to being inside the Stepney home, nor was either officer personally identified as being inside the Stepney home. Though Plaintiffs ask that I infer that these two officers must have entered the Stepney home, the record is void of any evidence to suggest that they did in fact enter the home. Accordingly, summary judgment is granted in favor of Waller and Maldonado as to count I.

**1. Qualified Immunity**.

Defendants McClendon, Branch, Cuadrado, Hawkins and Teresi remain as individual defendants to count I. Defendants argue that they are entitled to qualified immunity because Plaintiffs cannot demonstrate that their conduct was unconstitutional as to Plaintiff's unlawful search claim. To support claim of qualified immunity, it must be shown that, at the time of the alleged violation, it was not clearly established that the conduct claimed was unconstitutional. *Pearson v. Callahan*, 129 S.Ct. 808, 813 (2009).

I have already found that there is a question of fact as to the actions of Defendants McClendon, Branch, Cuadrado, Hawkins and Teresi within the Stepney home. It is well established that the Fourth Amendment "stands for the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). It is undisputed that Defendants had no search warrant to enter the Stepney home, asked for and were denied permission to enter, and yet entered the home anyway. Given these facts, I do not find that Defendants are entitled to qualified immunity.

**C. Counts II and V: Excessive Force and Assault and Battery**

Defendants admit that summary judgment is not appropriate for McClendon or Hawkins because there are clear allegations that each officer used force against Plaintiffs Dorian, Tristan, and Cynthia. However, Defendants argue that insufficient evidence exists to establish that Hein, Branch, Waller, Maldonado, Teresi, or Cuadrado used excessive force against, or battered, or assaulted any Plaintiff.

Plaintiffs contend that summary judgment is inappropriate for Defendants Cuadrado and Branch. Cuadrado and Branch admit that they entered the Stepney home along with McClendon.

9

Soon after entering, McClendon fought with Dorian. At this point, Cynthia tried to intervene, but was restrained by two officers. When she tried to break away from the officers, she was struck in the head. Neither Cuadrado nor Branch admits striking Cynthia, however, Branch admits making physical contact with her. Cuadrado admits to being present during the altercation. Given the conflicting testimony regarding the events surrounding the altercation within the Stepney home, I deny Defendants' motion for summary judgment on counts II and V as to Cuadado and Branch. To the extent that Defendants argue that they are entitled to qualified immunity as to Plaintiffs' claims of excessive force, I reject their assertion.

As to Hein, Waller, Maldonado, and Teresi, no evidence has been put forth to indicate that they were involved in handcuffing Tristan, or fighting with Dorian and Cynthia. Accordingly, Defendants' motion for summary judgment on counts II and V as to defendants Hein, Waller, Maldonado, and Teresi is granted.

**D. Count III: Unlawful Detention**

Defendants argue that Waller and Maldanado should be granted summary judgment as to Plaintiffs' unlawful detention claims because there is no evidence to show that Waller or Maldanao detained any Plaintiff.

Hein and Teresi admit to escorting a young male that Hawkins had handcuffed to a police vehicle. Hawkins admits to handcuffing a male on the porch at the Stepney home. No evidence, however, was put forth to suggest that Waller or Maldanado unlawfully detained any Plaintiff. Accordingly, Defendants' motion for summary judgment on count III is granted as to Waller and Maldanado.

**E. Count IV: Failure to Intervene**

Before a duty to intervene will arise, an officer must (1) have reason to know that a constitutional violation has been committed by a law enforcement official, and (2) have a realistic opportunity to intervene to prevent harm from happening. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Failure to intervene must be intentional and not merely the negligent failure to perceive a constitutional violation. *Rascon v. Hardiman*, 803 F.2d 269, 276 (7th Cir. 1986).

Defendants contend that Plaintiffs can neither identify nor describe any one of the officers who might have been present during the alleged constitutional violations, or establish that any Defendant officer knew that a violation was occurring and had a realistic opportunity to intervene. This argument is contradicted by the record. It is undisputed that Defendant officers arrived at the Stepney home on the evening of August 28, 2007, with the purpose of recovering McClendon's stolen goods. Plaintiffs allege that numerous constitutional violations occurred that night, including an illegal search of the Stepney home, the use of excessive force, and unlawful detention.

As discussed *supra*, Defendants McClendon, Hein, Branch, and Cuadrado's undisputedly entered the Stepney home, and there is a question of fact as to Hawkins' and Teresi's presence in the home. Construing facts in favor of Plaintiffs, it seems clear that each Defendant who entered the Stepney home would (1) have reason to know about the constitutional violation occurring, and (2) have a realistic opportunity to intervene and prevent the harm from happening. Accordingly, summary judgment on count IV is denied as to McClendon, Hein, Branch, Cuadrado, Hawkins and Teresi.

The remaining Defendants, Maldonado and Waller, admit to little more than arriving at the Stepney home. Maldonado denies having any contact with any Plaintiff at the Stepney home. Maldonado recalls seeing officers in front of house on August 28, but did not know whether that

was the Stepney home; no one said anything to him about being inside the home. Likewise, he did not recall seeing anyone handcuffed to a railing, nor did he see any civilians in police cars that evening. Waller testified that when he arrived at the home, he walked up to the house and saw Cynthia and McClendon speaking to each other in front of the house. He was unaware of whether McClendon had already been inside the Stepney home. Waller identified himself as a sergeant and asked if things were OK, to which McClendon said yes. He also denies entering the Stepney home. Given this evidence, there are no facts to support the conclusion that either Maldonado or Waller (1) had reason to know about a constitutional violation, or (2) had an opportunity to prevent the harm from happening. Accordingly, summary judgment on count IV is granted as to Maldonado and Waller.

### F. Counts VI and VII: Respondeat Superior and Indemnification

Defendants argue that the City of Chicago ("the City") is entitled to summary judgment on counts VI and VII insofar as Plaintiffs seek to hold the City liable or seek indemnification from the City for the common law claims where Defendant officers have moved for judgment in their favor. Certain Defendants moved for summary judgment in their favor on Plaintiffs' common law claims of assault and battery as alleged in count V. The City cannot be held liable or directed to indemnify Defendant Officers if Defendant Officers cannot be held liable. 745 IL. COMP. STAT. 10/2-109. Therefore, Plaintiffs' claims against the City pursuant to respondeat superior and indemnification are dismissed as they pertain to Defendants Hein, Waller, Maldonado, Teresi, and Schulz who were granted summary judgment in their favor as to count V.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment is granted in part and denied in part. Defendants' motion is granted as to Schulz, Waller and Maldanado on all counts, and Hein and Teresi as to counts II and V. Plaintiffs' claims against the City pursuant to respondeat superior and indemnification are dismissed as they pertain to Defendants Hein, Waller, Maldonado, Teresi, and Schulz who were granted summary judgment in their favor as to count V.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: October 20, 2010